**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| YVONNE MACK, individually and on behalf of all others similarly situated,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>RESURGENT CAPITAL SERVICES, L.P., )<br>and LVNV FUNDING, LLC,  )<br>)<br>Defendants.  ) | No. 18 C 6300<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff Yvonne Mack defaulted on a consumer debt acquired by Defendant LVNV Funding, LLC ("LVNV") and serviced by Defendant Resurgent Capital Services, L.P. ("Resurgent"). After she disputed her debt in response to an initial collection letter, she received another form letter from Resurgent that included language as to how to dispute the debt. Mack contends that this form letter violated §§ 1692e and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because it used false or deceptive means to collect or attempt to collect her debt. Mack now moves for class certification under Federal Rule of Civil Procedure 23(b)(3), seeking to pursue this action on behalf of a class of individuals in Illinois who disputed their debts to debt collectors hired by Defendants but to whom Defendants then sent identical form letters instructing them to dispute the debts again. The Court finds that Mack has met the requirements for certification of a Rule 23(b)(3) class and so grants the motion for class certification.

## BACKGROUND

Yvonne Mack defaulted on her credit card payments to U.S. Bank, N.A. LVNV purchased the outstanding debt from U.S. Bank and tasked its sister company, Resurgent, to collect the debt. On April 27, 2018, Frontline Asset Strategies ("Frontline"), another debt collector working for Resurgent, sent Mack an initial collection letter. That letter indicated that Frontline had Mack's account for purposes of collection, identified the amount due on the account, and provided ways for Mack to pay the debt. It also included language explaining how to dispute the validity of the debt (the "§ 1692g validation notice"):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of this debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office, in writing, within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Doc. 1 ¶ 25. On June 5, 2018, Mack sent a letter to Frontline disputing the debt and requesting validation. Mack dated the letter "5-4-18," but the text of her letter reports she received Frontline's "4-27-18" letter on "5-11-18." Doc. 1-4 at 1. In the letter, Mack indicated that she was providing notice that she disputed the claim and requested validation of the account pursuant to the FDCPA.

Frontline received Mack's letter on June 7, 2018 and forwarded it to Resurgent. Resurgent has responsibility for responding to disputes and providing validation. Instead of providing validation, on June 18, 2018, Resurgent sent Mack a letter, stating in pertinent part: "Resurgent Capital Services L.P. manages the above referenced account for LVNV Funding LLC and has initiated a review of the inquiry we recently received." Doc. 1 ¶ 30. The June 18

2

Resurgent letter also included a § 1692g validation notice, using almost indistinguishable language to that found at the bottom of the April 27 Frontline letter. Defendants' Rule 30(b)(6) witness testified that Resurgent included the § 1692g validation notice because the letter was Resurgent's first communication with Mack.

Mack contends that the June 18 letter would cause a consumer to believe that they must again dispute a debt even though they had already submitted a dispute. For this reason, Mack argues that the June 18 form letter violated §§ 1692e and 1692f.

## LEGAL STANDARD

Class certification is appropriate where the proposed class meets the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The proposed class must also satisfy one of Rule 23(b)'s three subsections, in this case, Rule 23(b)(3). Fed. R. Civ. P. 23(b); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, although not an explicit requirement of Rule 23, the party seeking certification must demonstrate that the class members are identifiable. *Oshana*, 472 F.3d at 513.

The Court has broad discretion in determining whether it should certify a proposed class. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Court must engage in a "rigorous analysis," resolving material factual disputes where necessary. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d

672, 676 (7th Cir. 2001). But "[i]n conducting [the Rule 23] analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66, (2013) (courts consider merits questions only to the extent relevant to determining whether the proposed class has met Rule 23's prerequisites).

## ANALYSIS

### I. Ascertainability

Before considering whether Mack can demonstrate compliance with the Rule 23(a) and 23(b)(3) requirements, the Court must address Defendants' claim that Mack has not proposed an ascertainable class. A class is ascertainable when it is "defined clearly, "based on objective criteria," and not "defined in terms of success on the merits." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659–60 (7th Cir. 2015). A class is overbroad if it includes "a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 824 (7th Cir. 2012).

In her motion for class certification, Mack defined the class as:

> all persons similarly situated in the State of Illinois from whom Defendants attempted to collect a delinquent consumer debt, via a collection letter similar to the letter that is attached to the Complaint (Dkt. 1-5), where said individuals sought validation within the 30-day validation period, from one year before the date of this Complaint to the present.

Doc. 49 at 3. Defendants argue that this proposed class does not meet the ascertainability requirement because no objective or administratively feasible method exists to determine the individuals who sought validation within the thirty-day validation period given that the thirty-day period depends on when an individual *received* the initial communication, not when Defendants or their agents sent it. They contend that Mack's proposed "limitation to those who disputed

4

within the validation period is vital to Plaintiff's argument of confusion" because "if the recipient did not dispute within the validation period as required by § 1692g, receipt of a second validation notice could not reasonably confuse the recipient as to whether he or she had effectively asserted his or her right to dispute the debt." Doc. 65 at 6.

In response to this argument, Mack first clarifies that the thirty-day requirement in § 1692g(b) has no relevance to the rights she asserts under §§ 1692e and 1692f. Indeed, although § 1692g(b) provides consumers with certain rights when they dispute a debt within the thirty-day period, Mack does not allege that Resurgent violated any of those rights. *Cf.* 15 U.S.C. § 1692g(b); *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247 (3d Cir. 2014) ("The language of § 1692g indicates that disputing a debt is optional. The statute lists consequences '*[i]f* the consumer' disputes a debt."). Instead, Mack argues that by including the § 1692g validation notice in communications after consumers had seemingly disputed a debt or requested validation, Defendants violated §§ 1692e and 1692f, claims that are independent of whether the consumers timely disputed their debts under § 1692g(b). *See Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 (7th Cir. 2018) ("To the extent that § 1692g(b) defines 'disputed,' that definition applies only to the requirements of that provision and does not extend to § 1692e(8)."); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 392 (4th Cir. 2014) ("Nothing in the text of the FDCPA suggests that a debtor's ability to state a claim under § 1692e is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g."). Mack clarifies in her reply brief that her claims do not depend on "proving the exact date consumers received their initial collection letters" given that "Defendants sent the same form letter response to all members of the putative class who disputed the debts – regardless of whether Defendants considered the disputes timely." Doc. 66 at 1, 3. Given this explanation and

the lack of any time limitation for Mack's claims under §§ 1692e and 1692f, the Court does not find the thirty-day limitation in Mack's initial proposed class definition necessary to the class definition and leaves arguments about the viability of her claims with or without the thirty-day limitation to a later date.

Regardless, to address Defendants' concerns about ascertainability, Mack indicates a willingness to modify the class definition to reach only those individuals Defendants identified as having disputed their debts within forty-five days of the mailing of the initial collection letter and to whom Defendants then sent a form letter containing the § 1692g validation notice. Defendants used this forty-five day period to identify 613 consumers who, in the year before Mack filed her complaint, "seemingly sought validation within the validation period," taking into account, for example, mail processing delays. Doc. 50-1 at 3; Doc. 65-1 at 74–76. The fact that Defendants could identify this group of consumers suggests a potential ascertainable class. *See Rhodes v. Enhanced Recovery Co.*, 328 F.R.D. 225, 228 (S.D. Ind. 2018) (finding ascertainability met where defendant produced a spreadsheet of individuals fitting the class definition in response to a discovery request). The Court therefore exercises its discretion to modify Mack's proposed class definition to reach only the 613 individuals whom Defendants themselves acknowledge "seemingly sought validation within the validation period." Doc. 50-1 at 3; *see Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("[T]he obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B)."); *In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in the litigation."). The Court will consider whether Mack can demonstrate compliance with the remaining Rule 23 requirements using the following definition:

> All persons in the State of Illinois who, between September 14, 2017 and September 14, 2018, sought validation of a debt within forty-five days of the mailing of an initial collection letter from Defendants Resurgent Capital Services, L.P. or LVNV Funding, LLC or their agents, and in response received a form letter that included a § 1692g validation notice.

## II.      Rule 23(a) Requirements

### A.      Numerosity

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, a proposed class satisfies the numerosity requirement where it includes at least forty members. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). As discussed, Defendants acknowledge that 613 individuals in Illinois received the form letter after seemingly seeking validation during the validation period. This easily satisfies the numerosity requirement.

### B.      Commonality

Commonality requires Mack to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Mack's claims must arise from a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of litigation." (alteration in original) (citation omitted)). "[S]uperficial common questions—like . . . whether each class member 'suffered a violation of the same provision of law'—are not enough." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350).

7

Defendants do not contest the commonality requirement, and the Court agrees Mack's proposed class has met it. Mack's claims rely on the same form letter sent to each putative class member, with the main legal issue concerning whether the inclusion of the § 1692g validation notice in the form letter would mislead consumers who had already disputed their debt. *See Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) ("The requisite common nucleus of operative fact exists in FDCPA cases when the controversy arises from a standard form debt collection letter. This case involves a standard form letter, and the Court would have to resolve a question common to all potential class members: whether Exhibit A violates Section 1692e of the FDCPA." (citation omitted)). Because FDCPA violations are determined from the perspective of an unsophisticated consumer, an objective standard, this determination is common to all class members. *See Steffek v. Client Servs., Inc.*, --- F.3d ----, 2020 WL 288239, at *3 (7th Cir. 2020); *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *9–10 (N.D. Ill. Apr. 21, 2017).

**C.     Typicality**

To satisfy typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (typicality primarily "focus[es] on whether the named representatives' claims have the same essential characteristics as the claims of the class at large"). The Court considers typicality in reference to a defendant's actions, not with respect to specific defenses a defendant may have against certain class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

Mack contends that her claims are typical of those of the class because they all relate to the same form letter that Defendants sent after receiving a dispute. Defendants respond that Mack faces a factual defense that she did not timely seek validation, undermining her claim of typicality. As the Court has discussed, however, Mack's claims do not necessarily turn on the timeliness of her validation request. Therefore, any factual distinctions concerning when Mack or class members disputed their debts does not defeat typicality, particularly given that all class members' claims rise or fall on the same legal theory. *See De La Fuente*, 713 F.2d at 232 ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact."); *Marquez v. Weinstein, Pinson & Riley, P.S.*, No. 14 C 739, 2017 WL 4164170, at *6 (N.D. Ill. Sept. 20, 2017) (differences in how class members received and responded to complaints did "not change the fundamental nature of the claims here: that the defendants provided misleading information about how to dispute a debt").

### D. Adequacy of Representation

To satisfy the adequacy of representation requirement, the class representative must possess the same interests as the class members and not have antagonistic or conflicting claims or interests. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The adequacy inquiry also involves determining whether the proposed class counsel is adequate. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Defendants do not challenge the adequacy of Mack's counsel, and the Court is satisfied that counsel will adequately represent the class.

But Defendants do take issue with Mack's adequacy as a class representative. First, similar to their typicality argument, Defendants contend that Mack's testimony at her deposition

9

Case: 1:18-cv-06300 Document #: 71 Filed: 02/03/20 Page 10 of 15 PageID #:772

creates a question of fact as to whether she belongs to the class. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) (to be an adequate representative, among other things, "[a] named plaintiff must be a member of the putative class"). At Mack's deposition, a question arose as to when Mack received the Frontline letter and when she responded. At one point, she claimed she wrote the letter on May 4, 2018, and the reference to May 11, 2018 in the letter was likely a typo. Later, Mack changed her testimony and stated she likely made a typo not with respect to the date she received the letter but rather with respect to the date she wrote the letter, intending for it be dated June 4, not May 4. Defendants argue that Mack's changed testimony creates a credibility question and prevents Mack from demonstrating that she belongs to the class she seeks to represent. But the Court has already modified the class definition to address this potential issue, with the revised definition making clear that, regardless of when Mack received the Frontline letter and wrote her response, she belongs to the class because she sent her dispute to Frontline thirty-nine days after the mailing of the Frontline letter.

Separately, Defendants argue that Mack's deposition testimony calls into question her ability to fairly advocate for the class. This standard, however, is "not difficult," with the class representative needing only an "understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Quiroz*, 252 F.R.D. at 442 (citations omitted). Defendants highlight the fact that Mack is the primary caregiver for her mother and cannot be away from her home for long, although Mack clarified that she could make arrangements for her mother's care if necessary. Defendants also highlight Mack's admissions that she (1) did not receive or review any documents produced in the case, (2) did not know the potential damages the class could recover or whether class members had similar claims, and (3) would leave the decision of whether to accept a settlement offer to her

10

attorneys. But Mack also testified that she has reviewed the complaint, the letters at issue, and the discovery responses with counsel, with counsel keeping her informed about the progression of the case. Although Mack did not know all of the details about which Defendants' counsel inquired, the fact that Mack has ceded much of the control of the litigation to her counsel does not demonstrate her inadequacy as a class representative. *Id.* (" It is permissible for class counsel to be the driving force behind the more complicated legal theories, as long as the named plaintiff has some general knowledge and understanding of the issues, and a willingness to participate in the suit."); *see also Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary [are] sheer sophistry." (quoting *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 832 n.9 (3d Cir. 1973))). Mack has demonstrated a familiarity with the claims, an intent to represent individuals who received similar letters, and a willingness to continue participating in this case on behalf of these individuals. The Court finds that Mack's basic understanding of the case suffices to fulfill her limited role as the class representative in this case. *See Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013) ("To question her adequacy is to be unrealistic about the role of the class representative in a class action suit. The role is nominal."); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981) ("[T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants.").

11

Therefore, the Court finds that Mack has satisfied Rule 23(a)'s requirements and moves to consideration of Rule 23(b)(3).

## III. Rule 23(b)(3)

Rule 23(b)(3) allows for certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (alterations in original) (quoting 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). In other words, a plaintiff can meet the predominance requirement by using common evidence to prove the class members' claims. *Id.* Defendants do not challenge predominance, and the Court finds it exists here, where the viability of the class claims depends on the same question of whether an unsophisticated consumer would find the form letter misleading. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) ("[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.'" (second alteration in original) (quoting *Amgen*, 568 U.S. at 460)).

Defendants do argue, however, that Mack has not demonstrated the superiority of pursuing this case as a class action over other means of resolving the issues. Class actions are typically considered superior "where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005); *see Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the

12

problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). But Defendants ask the Court to reexamine the typical practice of certifying FDCPA cases as class actions given the "realities of FDCPA litigation nowadays" and the proliferation of FDCPA lawsuits. Doc. 65 at 12; *see Vandehey v. Client Servs., Inc.*, 390 F. Supp. 3d 956, 963 (E.D. Wis. 2019) ("It is not the purpose of the FDCPA . . . to benefit attorneys."). Although the Court agrees that FDCPA litigation has given rise to a cottage industry for both plaintiff and defense counsel, the Court does not find that this alone requires Mack and other potential members of the class to proceed on an individual basis. The stakes for each individual class member remain low, even if attorneys may stand at the ready to bring an FDCPA suit. *See Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed."). And while Defendants claim the alleged violation in this case falls outside the type of abusive practices that prompted Congress to enact the FDCPA, regardless of where it falls on the spectrum of FDCPA violations, the FDCPA "explicitly contemplates class actions for statutory damages." *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 321 (N.D. Ill. 1995). Judicial economy also supports allowing this case to proceed as a class, addressing the common questions about the form letter's conformance with the FDCPA in one case instead of 613. *See Quinn v. Specialized Loan Servicing, LLC*, 331 F.R.D. 126, 134 (N.D. Ill. 2019) ("Rather than separately adjudicating hundreds of very similar individual cases, the most efficient method for resolving these claims is a class action."); *Marquez*, 2017 WL 4164170, at *10 ("[R]ather than litigating the legality of the defendants' form complaint over 100 (or 900) times, the Court can resolve these claims in a signal blow." (citation omitted)).

13

Finally, in connection with their argument concerning superiority, Defendants raise a concern that not all class members suffered a concrete injury so as to satisfy Article III's standing requirements. In *Spokeo, Inc. v. Robins*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." --- U.S. ----, 136 S. Ct. 1540, 1549 (2016). The Seventh Circuit applied *Spokeo* to an FDCPA case, finding that a plaintiff did not have standing where she "alleged nothing more than a bare procedural violation" of the FDCPA because she did not suggest she would have used the information she claimed the defendant omitted in violation of the FDCPA. *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 334, 339 (7th Cir. 2019). Defendants do not argue that *Spokeo* and *Casillas* call into question Mack's standing but rather that the need to consider each class member's standing would require individualized inquiries and defeat any advantages of a class action. In making this argument, Defendants ignore that only the named plaintiff must have standing for the claim to proceed on a classwide basis. *See Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009) ("[A]s long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied."). And without further briefing, the Court cannot determine whether the alleged violation itself would satisfy the standing requirements set forth in *Spokeo* and *Casillas* so as not to require any individual inquiries. *See, e.g.*, *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2019 WL 4059154, at *5–6 (N.D. Ill. Aug. 28, 2019) (all class members had standing, even in light of *Casillas*, because the FDCPA violation at issue "presented an appreciable risk of harm to the recipients," and each class member received the identical letter and suffered the same injury); *Volkman v. Enhanced Recovery Co.*, No. 18-C-91, 2018 WL 5282900, at *2 (E.D. Wis. Oct. 24, 2018) (individualized evidence of class member's injury not required where named plaintiff had standing and "each purported class member's

14

injury is the result of the same alleged conduct by ERC producing the same risk of financial harm"). The Court therefore finds a class action to be the superior mechanism to resolve the issues in this case and that Mack has carried her burden to demonstrate the propriety of class certification. To the extent further proceedings reveal the need for individualized inquiries into each class member's injuries, the Court will address the continued viability of maintaining this case as a class action at that time.

## CONCLUSION

For the foregoing reasons, the Court grants Mack's motion for class certification [49]. The Court certifies the following class under Rule 23(b)(3):

> All persons in the State of Illinois who, between September 14, 2017 and September 14, 2018, sought validation of a debt within forty-five days of the mailing of an initial collection letter from Defendants Resurgent Capital Services, L.P. or LVNV Funding, LLC or their agents, and in response received a form letter that included a § 1692g validation notice.

The Court appoints Yvonne Mack as the class representative and David J. Philipps, Mary E. Philipps, Angie K. Robertson, Larry P. Smith, and David M. Marco as class counsel.

Dated: February 3, 2020

_____
SARA L. ELLIS
United States District Judge