UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YVONNE MACK, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 18 C 6300 |
| v. | ) ) | Judge Sara L. Ellis |
| RESURGENT CAPITAL SERVICES, L.P., and LVNV FUNDING, LLC, | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Yvonne Mack defaulted on a consumer debt acquired by Defendant LVNV Funding, LLC ("LVNV") and serviced by Defendant Resurgent Capital Services, L.P. ("Resurgent"). After she disputed her debt in response to an initial collection letter, she received another form letter from Resurgent that included language as to how to dispute the validity of the debt. Mack contends that this second form letter violated §§ 1692e and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because, by repeating the validation language, the second letter used false or deceptive means to collect or attempt to collect her debt. The Court certified the following class pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All persons in the State of Illinois who, between September 14, 2017 and September 14, 2018, sought validation of a debt within forty-five days of the mailing of an initial collection letter from Defendants Resurgent Capital Services, L.P. or LVNV Funding, LLC or their agents, and in response received a form letter that included a § 1692g validation notice.

Doc. 71. Defendants now move to dismiss the case pursuant to Rule 12(b)(1), arguing that Mack lacks standing to pursue her claims. Because the parties have engaged in discovery, however,

the Court treats Defendants' motion as one for summary judgment under Rule 56 and concludes that Mack has not demonstrated a concrete harm so as to provide her with Article III standing. Thus, the Court lacks jurisdiction to address Mack's claims, dismisses her individual claims, and vacates its order certifying the class.

## BACKGROUND

Mack defaulted on her credit card payments to U.S. Bank, N.A. LVNV purchased the outstanding debt from U.S. Bank and tasked its sister company, Resurgent, to collect the debt. On April 27, 2018, Frontline Asset Strategies ("Frontline"), another debt collector working for Resurgent, sent Mack an initial collection letter. That letter indicated that Frontline had Mack's account for purposes of collection, identified the amount due on the account, and provided ways for Mack to pay the debt. It also included the following language explaining how to dispute the validity of the debt (the "§ 1692g validation notice"):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of this debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office, in writing, within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Doc. 1 ¶ 25. On June 5, 2018, Mack sent a letter to Frontline, in which she indicated that she disputed the debt and requested validation of the account pursuant to the FDCPA.

Frontline received Mack's letter on June 7, 2018 and forwarded it to Resurgent. Resurgent has responsibility for responding to disputes and providing validation. Instead of providing validation, on June 18, 2018, Resurgent sent Mack a letter, stating in pertinent part: "Resurgent Capital Services L.P. manages the above referenced account for LVNV Funding

2

LLC and has initiated a review of the inquiry we recently received." Doc. 1 ¶ 30. The June 18 Resurgent letter also included a § 1692g validation notice, using almost indistinguishable language to that found at the bottom of the April 27 Frontline letter. Defendants' Rule 30(b)(6) witness testified that Resurgent included the § 1692g validation notice because the letter was Resurgent's first communication with Mack.

Mack contends that the June 18 letter would cause a consumer to believe that they must again dispute a debt even though they had already submitted a dispute. Indeed, Mack did just that, sending Resurgent a letter, dated July 17, 2018, that again indicated that she disputed the debt and requested validation of the account. Mack testified that the June 18 letter caused her confusion and stress. She also stated that it led her to unnecessarily expend time and money, as she went to the library to type and print the letter and spent money to mail it.

## ANALYSIS

Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S. Ct. 1540, 1547 (2016). Mack's burden changes as the case proceeds: "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," while at the summary judgment stage, "the plaintiff can no longer rest on such 'mere allegations', but must 'set forth' by affidavit or other evidence 'specific facts'" supporting each element of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Defendants argue that Mack's complaint does not include sufficient allegations of an injury in fact to support Article III standing.[1] Initially, the Court finds Defendants' focus on

---

[1] This is the first time the Court addresses whether Mack has standing to pursue her claims. In ruling on Mack's class certification motion, the Court addressed Defendants' concern that not all class members

3

Mack's complaint misplaced because discovery has concluded and Mack may cure any deficiencies in her complaint with additional evidence that demonstrates her standing to pursue her claims. *See Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285–86 (7th Cir. 2020) ("[I]f a complaint 'omitted essential jurisdictional allegations,' but evidence later demonstrates that the court has jurisdiction, 'the deficiency in the complaint is not fatal.'" (quoting *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530 (7th Cir. 1985))); *Patterson v. Howe*, No. 16-cv-03364, 2021 WL 1124610, at *5 (S.D. Ind. Mar. 23, 2021) (the plaintiff could cure his failure to allege facts meeting the standing requirement in his complaint through an affidavit). *But see Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (refusing to consider additional claim of harm asserted on appeal because the plaintiff had not included such allegations in her complaint and could not "broaden her complaint by inserting a new injury" on appeal). Thus, the Court considers not only Mack's complaint but also the additional evidence she has provided to determine whether she has adequately alleged an injury in fact.

In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." 136 S. Ct. at 1549; *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (no standing for "a statutory violation completely removed from any concrete harm or appreciable risk of harm"). The Seventh Circuit applied *Spokeo* to an FDCPA claim in *Casillas v. Madison Avenue Associates, Inc.*, in which the plaintiff alleged that a debt collector's letter violated § 1692g(a) by omitting the statutorily required notice that a consumer must dispute a debt in writing. 926 F.3d 329, 332 (7th Cir.

---

suffered a concrete injury so as to satisfy Article III's standing requirements. *See* Doc. 71 at 14–15. At that time, however, Defendants did not challenge Mack's standing and instead argued that the need to consider each class member's standing would require individualized inquiries and defeat any advantages of a class action. *Id.* at 14. While the Court rejected Defendants' argument, it noted that it would address the continued viability of maintaining the case as a class action to the extent further proceedings revealed the need for individualized inquiries into each class member's injuries. *Id.* at 15.

2019). Because the plaintiff never considered responding to the debt collector's letter, the Seventh Circuit concluded that she had not suffered an injury in fact. *Id.* at 334.

Recently, in a series of decisions, the Seventh Circuit further clarified that *Spokeo*'s concrete injury requirement applies to all FDCPA cases, regardless of whether the alleged statutory violation is considered procedural, as in *Casillas*, or substantive, as in cases alleging violations of §§ 1692e and 1692f. *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1065–66 (7th Cir. 2020); *see also Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Spuhler*, 983 F.3d 282; *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020). In other words, regardless of the nature of the FDCPA violation, a plaintiff "must allege (and later establish) that the statutory violation harmed him 'or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Larkin*, 982 F.3d at 1066 (quoting *Casillas*, 926 F.3d at 333).

The Seventh Circuit's recent FDCPA standing decisions make clear that, standing alone, confusion, annoyance, stress, or intimidation does not amount to concrete harm for standing purposes. *See Pennell*, 990 F.3d at 1045 ("Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm."); *Gunn*, 982 F.3d at 1071 ("[A] sense of indignation (=aggravated annoyance) is not enough for standing."); *Brunett*, 982 F.3d at 1068 ("[T]he state of confusion is not itself an injury."); *id.* at 1069 ("Attaching an epithet such as 'intimidation' to a letter does not show that injury occurred."). Instead, "[a] debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt

5

with interest running at a higher rate." *Brunett*, 982 F.3d at 1068. Thus, Mack needs more than just allegations or evidence of stress and confusion to establish an injury in fact. *See id.* ("Although Brunett asserted that she was confused by the letter's language, she did not tie that confusion to an injury.").

Mack argues that not only did the June 18 letter cause her confusion and stress but that it also caused her to take detrimental action, namely, to spend time and money to send another letter disputing her debt and requesting validation. But these actions do not rise to the level of detriment the Seventh Circuit has required for standing in FDCPA cases, particularly because the June 18 letter's inclusion of a second validation notice did not adversely affect any interests Congress sought to protect through the FDCPA and instead effectively provided Mack with another opportunity to dispute her debt if she had failed to properly do so upon receipt of the first letter. *See Bazile*, 983 F.3d at 280 ("The FDCPA requires collectors to inform debtors of the amount owed to protect debtors from collection abuses that impinge their choices about how to respond to their debts and to the collection attempt. If the required information is omitted without hindering those choices or some other substantive interest the statute protects, there is no harm done—no concrete injury-in-fact." (citations omitted)); *Casillas*, 926 F.3d at 333 (a plaintiff "must show that the violation harmed or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect'" (citation omitted)). Had Mack taken some action related to her debt management choices, for example, "pa[id] something she [did] not owe, or [paid] a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate," she could show concrete harm. *Brunett*, 982 F.3d at 1068; *see also Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021) (detrimental step could be "paying money [a plaintiff] did not owe"); *Giannini v. United*

*Collection Bureau, Inc.*, No. 20 CV 5131, 2021 WL 1978321, at *4 (N.D. Ill. May 18, 2021) (the plaintiff adequately alleged a concrete harm where she claimed that dunning letters "created a false sense of urgency that led her to unsuccessfully attempt to secure funds to accept discounted offers," meaning "her other debts remained in default and accrued interest, she received derogatory credit reports, and her credit score declined"). Instead, Mack's injury—spending time and money in an attempt to clear up her confusion concerning whether she had validly disputed the debt—is analogous to injuries arising from consultations with lawyers or filing suit, which the Seventh Circuit has held do not amount to concrete harm. *See Gunn*, 982 F.3d at 1072 ("No one can doubt that the plaintiff in *Spokeo* was sore annoyed. If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a favorable judicial decision would be abolished."); *Brunett*, 982 F.3d at 1069 ("A desire to obtain legal advice is not a reason for universal standing."). If anything, the time and expense to which Mack went to ensure she properly disputed the debt, while potentially inconvenient, furthered her interests. *See Johnson v. Heuer Law Offs., S.C.*, No. 19-CV-1171, 2021 WL 1139800, at *6 (E.D. Wis. Mar. 25, 2021) (no concrete harm from hiring an attorney because that decision was not "detrimental to her interests" but instead was done to "represent her best interests").

      Therefore, the Court finds that Mack did not suffer a concrete harm and so lacks Article III standing. Because this means the Court lacks subject matter jurisdiction and, more importantly, that federal jurisdiction never attached, the Court vacates its certification of the putative class. *See Walters v. Edgar*, 163 F.3d 430, 432–33 (7th Cir. 1998) ("[I]f the named plaintiffs lacked standing when they filed the suit, there were no other party plaintiffs to step into the breach created by the named plaintiffs' lack of standing; and so there was no case when class

7

certification was sought."); *Matthias v. Tate & Kirlin Assocs., Inc.*, No. 19-cv-182, 2021 WL 107181, at *4–5 (W.D. Wis. Jan. 12, 2021) (vacating class certification order because the court never acquired jurisdiction over the named plaintiff's FDCPA claim).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [86]. The Court dismisses this case without prejudice because the named class representative lacks standing. Because the Court lacks subject matter jurisdiction, the Court vacates its February 3, 2020 order certifying a class under Rule 23(b)(3) [71]. The Court directs the Clerk to enter judgment and terminates this case.

Dated: September 1, 2021

_____
SARA L. ELLIS
United States District Judge