UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YVONNE MACK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RESURGENT CAPITAL SERVICES, L.P., and LVNV FUNDING, LLC,<br><br>Defendants. | No. 18 C 6300<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff Yvonne Mack defaulted on a consumer debt acquired by Defendant LVNV Funding, LLC ("LVNV") and serviced by Defendant Resurgent Capital Services, L.P. ("Resurgent"). After she disputed her debt in response to an initial collection letter, she received another form letter from Resurgent that again included language as to how to dispute the validity of the debt. Mack contends that this second form letter violated §§ 1692e and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, because, by repeating the validation language, the second letter used false or deceptive means to collect or attempt to collect her debt. The Court initially certified the following class pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All persons in the State of Illinois who, between September 14, 2017 and September 14, 2018, sought validation of a debt within forty-five days of the mailing of an initial collection letter from Defendants Resurgent Capital Services, L.P. or LVNV Funding, LLC or their agents, and in response received a form letter that included a § 1692g validation notice.

Doc. 71. Subsequently, the Court concluded that Mack did not have Article III standing and so dismissed her individual claims and vacated its class certification order. Doc. 98. Mack

appealed, and the Seventh Circuit reversed, concluding that Mack had sufficiently shown that Defendants' violation of the FDCPA caused her to suffer monetary damages so as to provide her with Article III standing. *Mack v. Resurgent Capital Servs., L.P.*, 70 F.4th 395 (7th Cir. 2023). The Seventh Circuit instructed on remand that the "class definition should be modified to limit the class to persons who acted to their detriment upon receiving the second letter." *Id.* at 408. Having conducted discovery into this question, Mack now proposes that the Court certify the following class of 111 individuals:[1]

> All persons in the State of Illinois who, between September 14, 2017 and September 14, 2018, sought validation of a debt within forty-five days of the mailing of an initial collection letter from Defendants Resurgent Capital Services, L.P., or LVNV Funding, LLC or their agents, and in response received a form letter that included a § 1692g validation notice (the "Resurgent § 1692g Notice Letter"), and who subsequently re-disputed and/or requested validation of the debt, within forty-five days of the mailing of the Resurgent § 1692g Notice Letter, in writing, via telephone, or via the ACDV automated credit dispute system (a/k/a e-Oscar).

Doc. 130 at 3. Because the Court finds that Mack's class definition does not properly address the Seventh Circuit's instruction to limit the class to those who acted to their detriment upon receipt of the second validation letter and that individualized standing questions predominate over the common questions present in this case, the Court denies Mack's amended motion for class certification. Mack may proceed individually on her FDCPA claims.

---

[1] Initially, Mack represented that, in addition to herself, her proposed class includes 133 individuals. In her reply, she agrees to remove twenty-three individuals from the definition, meaning that, when including herself in the class, her proposed class includes 111 individuals. *See* Doc. 132 at 2 n.1.

## BACKGROUND[2]

### I. Mack's Experience

After Yvonne Mack defaulted on her credit card payments to U.S. Bank, N.A., LVNV purchased the outstanding debt and tasked its sister company, Resurgent, to collect it. On April 27, 2018, Frontline Asset Strategies ("Frontline"), another debt collector working for Resurgent, sent Mack an initial collection letter, which identified the amount due on the account and provided ways for Mack to pay the debt. The letter also included language explaining how to dispute the validity of the debt (the "§ 1692g validation notice"):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of this debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office, in writing, within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Doc. 1 ¶ 25. On June 5, 2018, Mack sent a letter to Frontline disputing the debt and requesting validation.

Instead of sending the validation Mack requested, on June 18, 2018, Resurgent sent Mack a letter, stating in pertinent part: "Resurgent Capital Services L.P. manages the above referenced account for LVNV Funding LLC and has initiated a review of the inquiry we recently received." Doc. 1 ¶ 30. The June 18 Resurgent letter also included a § 1692g validation notice, using almost indistinguishable language to that in the April 27 Frontline letter. The Resurgent letter also included a toll-free phone number, fax number, and a customer portal website address. On

---

[2] The Court presumes familiarity with the facts of this case, as set forth in the Court's prior opinions on class certification, Doc. 71, and standing, Doc. 98, as well as the Seventh Circuit's opinion, 70 F.4th at 399–402. The Court only repeats that information necessary for its decision on Mack's amended motion for class certification.

July 17, 2018, Mack sent Resurgent a letter, again indicating that she disputed the debt and requested validation. Mack typed and printed the letter at the library and spent $3.95 to send this second request. Mack never received the requested validation.

## II.     Putative Class Members' Experiences

After the Seventh Circuit remanded this case, the parties engaged in discovery to determine which, if any, members of the previously certified class have standing and so could belong to a certified class challenging the second validation letter. Defendants provided Mack with records for 152 individuals who had any account activity in the ninety days following the sending of the second validation letter. Mack narrowed the putative class to 133 individuals, not including herself. Of these 133, twenty-eight verbally disputed the second validation letter. One individual complained to the CFPB or BBB, and one sent an FTC theft affidavit to Defendants. Four individuals disputed the letter through an automated credit dispute verification ("ACDV") form. Eleven sent their response to the second validation letter to CreditOne, their original creditor, and not to Defendants. Eighty-eight individuals sent a written dispute to Defendants after the second validation letter, though a number of these sent their initial disputes to another collector or to CreditOne.

Defendants highlight various distinguishing features of these 133 individuals' disputes. For example, for four of the accounts, an attorney, not the consumer, received the second validation letter and responded. For forty-nine accounts, Defendants represent that the communications after the second validation letter originated from a third-party credit repair agency, not the consumer. Eighty-five of the accounts have cardholder agreements with an arbitration and class action waiver provision. Defendants also point out that they sent validation on the same day as they sent the second validation letter to sixty individuals. Defendants

additionally identified at least fifty individuals who appear to have contacted Defendants to dispute a specific tradeline on their credit reports.

## LEGAL STANDARD

Class certification is appropriate where the proposed class meets the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). The proposed class must also satisfy one of Rule 23(b)'s three subsections, in this case, Rule 23(b)(3). Fed. R. Civ. P. 23(b); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, although not an explicit requirement of Rule 23, the party seeking certification must demonstrate that the class members are identifiable. *Oshana*, 472 F.3d at 513.

The Court has broad discretion in determining whether it should certify a proposed class. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Court must engage in a "rigorous analysis," resolving material factual disputes where necessary. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). But "[i]n conducting [the Rule 23] analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66, (2013) (courts consider merits questions only to the extent relevant to determining whether the proposed class has met Rule 23's prerequisites).

ANALYSIS

The Court previously addressed the Rule 23 requirements for class certification as they related to a broader class of consumers who sought validation of a debt within forty-five days of the mailing of an initial collection letter and in response received a second validation letter. Doc. 71 at 15. After remand, the Court now has before it the task of determining whether a more limited class—those who received the second validation letter and then, within forty-five days of that letter's mailing, redisputed or reasserted their validation rights in writing, by telephone, or through the ACDV system—satisfies the Rule 23 requirements. The parties generally agree that, as set forth in the Court's prior class certification opinion, the commonality, adequacy, and superiority requirements are met. *See* Doc. 71 at 7–13. They disagree, however, as to whether Mack's proposed class satisfies the numerosity, typicality, and predominance requirements. Their dispute mainly centers around the proper definition of the class given the Seventh Circuit's instruction to limit it to those "who acted to their detriment upon receiving the second letter," *Mack*, 70 F.4th at 408, which the parties acknowledge involves, at least in part, Article III standing.

Article III standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Every class member must have standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430 (2021). But the Seventh Circuit has previously indicated that a court need not determine each putative class member's standing before certification. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 380 (7th Cir. 2015) ("Plaintiffs need not prove that every member of the proposed class has been harmed before the class can be

6

certified. A class will often include persons who have not been injured by the defendant's conduct, but this possibility or, indeed inevitability, does not preclude class certification." (citation omitted)); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009) (rejecting argument that the court must determine which class members suffered damages before class certification as "putting the cart before the horse" in a way that "would vitiate the economies of class action procedure"). And the Supreme Court punted on that question in *TransUnion*. 594 U.S. at 431 n.4 ("We do not here address the distinct question whether every class member must demonstrate standing *before* a court certifies a class."). Nonetheless, the Seventh Circuit directed in this case that, upon remand, the class be limited "to persons who acted to their detriment upon receiving the second letter." *Mack*, 70 F.4th at 408.

The parties disagree as to what it means for someone to have "acted to their detriment upon receiving the second letter." Mack contends that this includes all consumers who "spent the time, effort and/or expense to re-assert their right to validation," Doc. 130 at 6 (footnote omitted), while Defendants maintain that only the expenditure of additional money amounts to a cognizable concrete injury, Doc. 131 at 2–5. The Court agrees with Defendants. While the Seventh Circuit did reference in passing the time and energy Mack spent reasserting her rights in response to the second validation letter, its conclusion that Mack had standing turned not on any time or effort she spent in reasserting her validation right but instead solely on the $3.95 she spent on postage to mail her second letter. *See Mack*, 70 F.4th at 399 ("Mack adequately alleged an injury in fact, and supported her allegations with evidence that the defendants' violation of the statute caused her to suffer monetary damages, albeit of modest size."); *id.* at 406 ("The Resurgent Letter thus caused her to suffer a concrete detriment to her debt-management choices in the form of the expenditure of additional money to preserve rights that she had already

7

preserved."); *id.* ("[W]ith the second postage fee of $3.95, Mack has pled harm to an underlying concrete interest that Congress sought to protect."); *id.* at 407 ("That the dollar cost was modest is irrelevant; she was misled to her financial detriment."). Thus, following the Seventh Circuit's instruction, only financial detriment suffices to support Article III standing in this case.

Defining the class in this way poses issues as to whether the class meets Rule 23(b)(3)'s predominance requirement. The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (alterations in original) (quoting 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). The Court recognizes that, under current precedent, to resolve Mack's class certification motion, the Court need not determine whether all 111 putative class members have standing. *Kohen*, 571 F.3d at 676. But this does not remove the standing question from the class certification analysis; "[d]etermining standing is an individualized issue as each 'member[ ] of [the] proposed class will need to present evidence that varies from member to member' to show Article III injury." *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.-Single Sport/Single Sch. (Football)*, No. 16 CV 8727, 2024 WL 1242987, at *9 (N.D. Ill. Mar. 22, 2024) (alterations in original) (quoting *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019)). That is the case here, as demonstrated by the parties' difficulties in determining who suffered a financial injury even after Defendants produced the relevant account records.

As to the standing question, Mack seeks to include all consumers who reasserted their rights after receiving the second validation letter by phone, mail, or through the ACDV system, arguing that the mail, internet service, and phone service is not free and so all these consumers suffered financial harm. Defendants respond that the second validation letter included toll-free

8

phone and fax numbers, and that consumers who used the ACDV system did not incur an additional cost to do so, with these actions thus not providing a basis for finding that a consumer suffered financial harm. *See, e.g.*, *Pierre v. Midland Credit Mgmt, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) ("Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit."). Additionally, as to disputes attorneys, credit repair organizations, or other individuals submitted on behalf of some of the putative class members, Defendants contend that Mack has not shown that the consumer even saw the second validation letter and so suffered any, let alone financial, harm. *See Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 335 (7th Cir. 2019) (no standing where the plaintiff, among other things, "did not allege that she even read the disclosure, much less that she relied on it to her detriment"); *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 775 (7th Cir. 2007) ("[A] representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable.").

The Court need not resolve the question of which side is correct as to what qualifies as financial harm for Article III standing purposes, with it instead enough to conclude that the account records alone do not allow the Court to make such a determination. Indeed, the parties' difficulties in agreeing to a class definition that comports with the Seventh Circuit's instruction, in addition to their disagreements over who falls within such a class, despite their review of account records demonstrates the individualized nature of the inquiry. This means that the Court would have to hold mini-trials to determine whether each putative class member suffered financial harm to support Article III standing. Because of the need to do so, the Court finds that individual issues concerning standing predominate over the common issues in this case.[3] *See In*

---

[3] Defendants also raise other distinctions that they claim narrow the class size to just eight individuals, show Mack's claims are not typical of those of other putative class members, and highlight why

*re Nat'l Collegiate Athletic Ass'n*, 2024 WL 1242987, at *9 (the need to narrow a class "to only people with Article III standing . . . . eliminates any predominance of plaintiffs' proposed common issues"). As a result, the Court declines to recertify a class in this case. Mack must proceed with her claims against Defendants on an individual basis.

## CONCLUSION

For the foregoing reasons, the Court denies Mack's amended motion for class certification [130].

Dated: September 23, 2024

_____
SARA L. ELLIS
United States District Judge

---

individualized issues predominate. But because the Court finds that even assuming that numerosity and typicality are met, Mack's proposed class does not meet Rule 23(b)(3)'s predominance requirement based on standing alone, the Court does not further address Defendants' other arguments.